IRVING, J.,
 

 for the Court.
 

 ¶ 1. Lewis Walton, upon a plea of guilty, was convicted by the DeSoto County Circuit Court of one count of sexual battery and one count of fondling.
 
 [1]
 
 The circuit court sentenced him to thirty years in the custody of the Mississippi Department of Corrections (MDOC) for conviction of the sexual battery count and to fifteen years in the custody of the MDOC for conviction of the fondling count, with the sentences to run consecutively. Walton subsequently filed a motion for post-conviction relief, and on January 2, 2008, the circuit court dismissed the motion. Walton filed his notice of appeal on February 25, 2008.
 
 [2]
 

 ¶ 2. Feeling aggrieved, Walton appeals and asserts: (1) that his plea of guilty was not intelligently and voluntarily entered, (2) that his plea lacked a factual basis, and (3) that he was deprived of effective assistance of counsel.
 

 ¶ 3. Finding no reversible error, we affirm the judgment of the circuit court.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 4. Before addressing the merits of the issues raised, we briefly discuss the timeliness of the appeal, for if the appeal was filed untimely, we lack jurisdiction to hear it. Rule 4(a) of the Mississippi Rules of Appellate Procedure states in pertinent part:
 

 Except as provided in Rules 4(d) and 4(e), in a civil or criminal case in which an appeal or cross-appeal is permitted by law as of right from a trial court to the Supreme Court,
 
 the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.
 

 (Emphasis added).
 

 ¶ 5’. As stated, the circuit court dismissed Walton’s motion for post-conviction relief on January 2, 2008. Therefore, pursuant to Rule 4(a), Walton’s notice of appeal should have been filed by February 1, 2008. However, since-the notice was not filed until February 25, 2008, the appeal is untimely, unless it is saved by the prison
 
 *69
 
 mailbox rule established by the Mississippi Supreme Court in
 
 Sykes v. State,
 
 757 So.2d 997 (Miss.2000). In
 
 Sykes,
 
 the court held as follows:
 

 [A] pro se prisoner’s motion for post-conviction relief is delivered for filing under the [Mississippi Uniform Post-Conviction Collateral Relief Act] and the Mississippi Rules of Civil Procedure when the prisoner delivers the papers to prison authorities for mailing. Prison authorities may initiate such procedures as are necessary to document reliably the date of such delivery, by means of a prison mail log of legal mail or other expeditious means. Henceforth, an inmate’s certificate of service will not suffice as proof.
 

 Id.
 
 at 1000-01(¶ 14).
 

 ¶ 6. In
 
 Jewell v. State,
 
 946 So.2d 810 (Miss.Ct.App.2006), this Court discussed the effect of the prison mailbox rule and the State’s burden of proof as follows:
 

 [W]hen seeking dismissal for an untimely appeal,
 
 the burden is on the State to prove that the prisoner has, indeed, failed to comply with Rule 1(a) of the Mississippi Rules of Appellate Procedure, taking into consideration the prison mailbox ‘rule.
 
 In accordance with
 
 Sykes,
 
 such proof must be in the form of a “prison mail log of legal mail,” or some similarly reliable documentation. A self-authenticating certificate from the records custodian pursuant to Mississippi Rules of Evidence 803(10), 902(4), or 902(11) may well suffice. That this burden rests with the State only makes sense. An individual appealing the denial of his post-conviction relief petition is, obviously, a prisoner. As a prisoner, his access to those documents required to excuse his procedural tardiness, as well as his financial resources necessary to acquire those documents, are severely limited. By contrast, the State, through its agency, the Mississippi Department of Corrections, already has possession of those documents that will prove or disprove the prisoner’s assertion that he mailed his appeal to the clerk timely. Given the delay that could occur from the time the prisoner delivers his notice of appeal for mailing to the appropriate prison official and the time said notice is actually filed by the trial court clerk, it is proper that the burden to show the appeal is untimely be on the State. After all, it is the State [which] seeks to dismiss the prisoner’s appeal for tardiness. We hold that ... where the appellant’s notice of appeal is filed by the clerk of the trial court within a reasonable time after the expiration of the thirty days allowed by Rule 4(a) of the Mississippi Rules of Appellate Procedure, a
 
 rebuttable presumption exists that the appellant’s appeal was timely filed, in accordance with the prison mailbox rule. Therefore, in such cases, if the State requests a dismissal for want of a timely appeal they must successfully rebut the ‘presumption of timeliness with proof of its absence in the forms discussed stopra.
 

 Id.
 
 at 813(¶ 9) (emphasis added) (citation and footnote omitted).
 

 ¶ 7. In the case at bar, the State did not attempt to meet this burden, and there is no evidence in the record to show when Walton delivered his notice of appeal to prison officials. We were faced with a similar situation in
 
 Hunt v. State,
 
 11 So.3d 764 (Miss.Ct.App.2009). There, this Court stated: “[P]ost-convietion relief petitions are governed by Mississippi Rules of Appellate Procedure 2(c), whereby this Court in a particular case may suspend the requirements of the appellate rules in the interest of justice. Specifically, this Court may suspend Rule 4(a) to allow an out-of-time appeal in criminal cases.”
 
 Id.
 
 at
 
 *70
 
 766(¶ 5) (footnote omitted). In light of today’s facts, we, as we did in
 
 Hunt,
 
 exercise our discretion under Rule 2(c) to suspend the thirty-day filing requirement, as Walton’s filing may have been timely under the prison mailbox rule. Accordingly, we address Walton’s appeal on the merits.
 

 1. Voluntariness of Plea
 

 ¶ 8. The standard of review regarding the voluntariness of guilty pleas is well settled. “[An appellate court] will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous.”
 
 House v. State,
 
 754 So.2d 1147, 1152(¶ 24) (Miss.1999) (quoting
 
 Schmitt v. State,
 
 560 So.2d 148, 151 (Miss.1990) (superceded by statute)). “The burden of proving that a guilty plea was involuntary is on the defendant and must be proven by [a] preponderance of the evidence.”
 
 Id.
 
 at (¶ 25) (citing
 
 Schmitt,
 
 560 So.2d at 151). “A guilty plea is deemed ‘voluntary and intelligent’ only where the defendant is advised concerning the nature of the charge against him and the consequences of the plea.”
 
 Alexander v. State,
 
 605 So.2d 1170, 1172 (Miss.1992).
 

 ¶ 9. In his first assignment of error, Walton argues that his plea of guilty was not intelligently and voluntarily made. Specifically, Walton asserts that he was not informed that he would be ineligible for parole. We find that Walton’s assertion is not borne out by the record. In the order dismissing Walton’s motion for post-conviction relief, the trial judge specifically found that Walton’s “petition to enter guilty plea,” which Walton swore that he read, stated that “if [Walton] was convicted of a sex crime, he would not be eligible for parole or early release.”
 
 [3]
 
 Additionally, although the transcript of the plea qualification hearing does not show that Walton was emphatically told that he would be ineligible for parole or early release, it also does not show that he was given false or incorrect information. The record reflects the following exchange between Walton and the court:
 

 [BY THE COURT]: Mr. Walton, in Cause No. 2005-0783, do you understand Count 1, sexual battery, the maximum penalty you could receive is 30 years in prison and a $10,000 fine?
 

 [BY THE DEFENDANT]: I do, sir.
 

 [BY THE COURT]: Do you understand that there is no mandatory minimum punishment for that charge?
 

 [BY THE DEFENDANT]: Yes, sir.
 

 [BY THE COURT]: You understand in Count 13, the fondling, you could receive a maximum penalty of 15 years in prison and a $5,000 fine?
 

 [BY THE DEFENDANT]: Yes, sir.
 

 [[Image here]]
 

 [BY THE COURT]: You understand that on that count if you were sentenced to consecutive sentences, you are looking at a possible 45 years’ imprisonment?
 

 [BY THE DEFENDANT]: Yes, sir.
 

 
 *71
 
 [BY THE COURT]:
 
 You understand that if you are sentenced to jail time, you have no assurance of parole or early release?
 

 [BY THE DEFENDANT]:
 
 Yes, sir-.
 

 [BY THE COURT]:
 
 You understand if you are convicted of a sex offense it is likely that you will not be released early?
 

 [BY THE DEFENDANT]:
 
 Yes, sir.
 

 [[Image here]]
 

 [BY THE COURT]: In Cause No. 2005-0951, do you understand the charge in which you are pleading guilty being fondling, the maximum penalty is 15 years in prison and a $5,000 fine?
 

 [BY THE DEFENDANT]: Yes, sir.
 

 [BY THE COURT]: Do you understand there is a 2-year mandatory imprisonment with a $1,000 mandatory minimum fine?
 

 [BY THE DEFENDANT]: Yes, sir.
 

 [BY THE COURT]:
 
 Do you understand that if yon, are sentenced to jail time, there is no assurance of parole or early release?
 

 [BY THE DEFENDANT]:
 
 Yes, sir.
 

 [BY THE COURT]:
 
 You understand that as a sex offender that means you are not likely to be released early?
 

 [BY THE DEFENDANT]: /
 
 do, sir.
 

 [[Image here]]
 

 [BY THE COURT]: Cause No. 2005-0952, Count 2, you are pleading guilty to fondling. Do you understand that carries a maximum penalty of 15 years’ imprisonment and a $5,000 fíne?
 

 [BY THE DEFENDANT]: Yes, sir.
 

 [BY THE COURT]: Do you understand there is a 2-year mandatory imprisonment and a $1,000 mandatory minimum fine?
 

 [BY THE DEFENDANT]: Yes sir.
 

 [BY THE COURT]:
 
 Do you understand, that if you are sentenced to jail time you have no assurance of parole or early release?
 

 [BY THE DEFENDANT]:
 
 Yes, sir.
 

 [[Image here]]
 

 [BY THE COURT]:
 
 You understand that as a sex offender you are not likely to be released early?
 

 [BY THE DEFENDANT]:
 
 Yes, sir.
 

 [BY THE COURT]: Mr. Walton, do you understand that means that if I were to accept you[r] pleas and sentence you to the maximum penalties running consecutively, you would be looking at a possible 75 years in prison?
 

 [BY THE DEFENDANT]: Yes, sir.
 

 (Emphasis added).
 

 ¶ 10. Based on the record as a whole, we cannot find that Walton was given erroneous information regarding his eligibility for parole or early release. As the above colloquy reflects, Walton was informed three times that he would likely be ineligible for parole, and on all three occasions, he confirmed that he understood the ramifications of the information provided. If Walton believed that the court was providing information that was at variance with what his counsel had placed in the guilty plea petition, it was incumbent upon him to bring the matter to the court’s attention for clarification. Having said this, we hasten to add that we are not condoning a trial judge’s use of less than unequivocal language in advising a criminal defendant regarding parole or early release. Nevertheless, as stated, we find that, given the totality of what was made known to Walton in the petition to plead guilty and at the plea qualification hearing, he was made aware prior to entering his guilty plea that
 
 *72
 
 he could not expect to receive parole or early release as a result of his plea of guilty to the sex offenses. Accordingly, this contention of error is without merit.
 

 2. Lack of Factual Basis
 

 ¶ 11. In his next issue, Walton asserts that the circuit court erred in accepting his guilty plea to the charge of sexual battery because no factual basis existed. In his brief, Walton makes the following points under his factual basis argument: “The prosecution presented statements only from alleged victims with no verifying witnesses, no medical proof from doctor exams or child [psychology] reports or child service representatives’ interview[s], allowing the alleged victims to refuse all tests for medical evidence.”
 

 ¶ 12. In
 
 Burrough v. State,
 
 9 So.3d 368, 373(¶ 14) (Miss.2009), the Mississippi Supreme Court discussed in detail the requirements for a factual basis:
 

 Pursuant to Rule 8.04(A)(3) of the Uniform Circuit and County Court Rules, “[bjefore the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a
 
 factual basis
 
 for the plea.” (Emphasis added). The factual-basis component of the rule requires that, “before it may accept the plea, the circuit court have before it,
 
 inter alia,
 
 substantial evidence that the accused did commit the legally defined offense to which he is offering the plea.”
 
 Corley v. State,
 
 585 So.2d 765, 767 (Miss.1991). What facts must be shown depends on the crime and its assorted elements.
 
 Id.
 
 There are numerous ways by which the facts may be found, but
 
 what ultimately is required is “there must be enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged.” Id.
 
 (citing
 
 United States v. Broce,
 
 488 U.S. 563, 570, 109 S.Ct. 757, 764, 102 L.Ed.2d 927, 936 (1989)).
 

 (Emphasis added).
 

 ¶ 13. Here, the State presented a brief statement to the circuit court as to what it would be able to show if the case went to trial. The following colloquy illustrates this point:
 

 [DISTRICT ATTORNEY]: In Cause No. 2005-0733-C(D), Count 1, the State is prepared to show by credible and admissible evidence and beyond a reasonable doubt that between the dates of October 1st and November 30th, 2004, the Defendant made sexual penetration with ... a child under [sic] the age of at least 14, but under age 16. In Count 13 of the indictment, the State would prove that on or about the 11th day of June 2005, the Defendant had fondled ... a child under the age of 16. In Cause No. 2005-0951C(D), Count 4, the State is prepared to show by credible and admissible evidence and beyond a reasonable doubt that between the dates on January 1st and December 31st, 2004, this Defendant did fondle ... a child under the age of 16 years. And finally in Cause No. 2005-0952C(D), the State would prove by credible and admissible evidence and beyond a reasonable doubt that between the dates of March 1st and March 31st, 2005, this Defendant did fondle ... a child under the age of 16 years.
 

 Your Honor, in this case, the first child to actually come forward ... reported to her mother and to law enforcement various acts of child fondling that this Defendant had committed against her. Ultimately, all four of the children came forward and made various declarations that he did in fact fondle them. Ultimately, Matt Anderson with the Southaven Police
 
 *73
 
 Department became involved. [Another child] did a taped phone call to the Defendant. During the course of that phone call, the Defendant acknowledges that he had performed certain sexual acts on [her].
 

 All of these incidents occurred in Sou-thaven — in DeSoto County, therefore, within the Court’s jurisdiction. [The child who participated in the phone call] in particular was involved when she was going to a hunting class and he was picking her up when she was going to the hunting class. Over the course of that period of time, set forth in the indictment, acts went on each of those days throughout that period of time.
 

 BY THE COURT: Mr. [DEFENSE ATTORNEY], on each indictment in each count, are you satisfied that the District Attorney’s office could present credible evidence necessary to meet the applicable burden to get these cases and counts to a jury if these cases were in fact to go to trial including on each proof of jurisdiction venue and on each proof of the age of the alleged victim and the difference of age between the alleged victim and the Defendant?
 

 BY [DEFENSE ATTORNEY]: Yes, Your Honor.
 

 * * ⅜ *
 

 BY THE COURT: Regarding each of these indictmentfs] and each Count, that is Cause No. 2005-0733, Count 1; sexual battery, Count 13; fondling. 2005-0951, Count 4; fondling. Cause No. 2005-0952, Count 2; fondling, do you have any disagreements as to what the State says they can prove at trial if your case went to trial?
 

 [BY THE DEFENDANT]: No, Sir.
 

 * * * *
 

 [BY THE COURT]: Are you pleading guilty because you did it?
 

 [BY THE DEFENDANT]: Yes.
 

 ¶ 14. In
 
 Boddie v. State,
 
 875 So.2d 180, 181 (¶ 1) (Miss.2004), our supreme court was faced with the same issue that we are faced with today — whether there was a factual basis to support a defendant’s guilty plea. Franklin Rashad Boddie was convicted of the transfer of cocaine after he pleaded guilty to the crime.
 
 Id.
 
 In his petition for post-conviction relief, Boddie sought to vacate his conviction and sentence on the ground that no factual basis existed for the plea.
 
 Id.
 
 In finding that a factual basis existed, the
 
 Boddie
 
 court stated:
 

 While the . transcript of the guilty plea hearing contains no specific reference to a factual basis for the charge of transfer of cocaine, Boddie made a statement, which the trial court ruled to be admissible, in which he admitted to the crime alleged in the indictment. Boddie also acknowledged at his guilty plea hearing that he was satisfied that the State could prove, beyond a reasonable doubt, that he was guilty of the crime of transfer of cocaine. Thus, based on the totality of the evidence, there existed a factual basis for Boddie’s plea of guilty to transfer of cocaine.
 

 Id.
 
 at 183(¶ 8).
 

 ¶ 15. In this case, we find that all of the requirements, as articulated in
 
 Burrough
 
 and
 
 Boddie,
 
 have been met. The State presented substantial evidence to the circuit court of how it would prove that Walton committed sexual battery against the minor child. Similar to the defendant in
 
 Boddie,
 
 Walton admitted to the circuit court that he had committed sexual battery against the minor child and that he was satisfied that the State could prove
 
 *74
 
 beyond a reasonable doubt that he committed the crime. Therefore, this issue is without merit.
 

 3. Ineffective Assistance of Counsel
 

 ¶ 16. In his last assignment of error, Walton argues that he was deprived of effective assistance of counsel. He claims that his attorney failed to discover, investigate, or interview witnesses.
 

 ¶ 17. To prove an ineffective assistance of counsel claim, a defendant must show that his counsel’s performance was deficient and that this deficiency prejudiced his defense.
 
 Liddell v. State,
 
 7 So.3d 217, 219(¶ 6) (Miss.2009) (citing
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The burden of proof rests with the defendant to show both prongs.
 
 Id.
 
 “In considering a claim of ineffective assistance of counsel, an appellate court must strongly presume that counsel’s conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy. In other words, defense counsel is presumed competent.”
 
 Id.
 
 (quoting
 
 Bennett v. State,
 
 990 So.2d 155, 158(¶ 9) (Miss.2008)). To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.” Str
 
 ickland,
 
 466 U.S. at 694, 104 S.Ct. 2052. In cases involving post-conviction collateral relief, “where a party offers only his affidavit, then his ineffective assistance claim is without merit.”
 
 Vielee v. State,
 
 653 So.2d 920, 922 (Miss.1995).
 

 ¶ 18. Walton has not offered an affidavit suggesting that his attorney was ineffective. Further, we find it important to note that Walton made statements during his plea qualification hearing that wholly contradict the assertions he brings before us on appeal. During the plea qualification heaidng the circuit court addressed the effectiveness of Walton’s attorney as follows:
 

 BY THE COURT: Are you satisfied with the sendees rendered to you by [your attorney]?
 

 BY THE DEFENDANT: Yes, sir.
 

 BY THE COURT: Has he been available to you?
 

 BY THE DEFENDANT: Yes, sir.
 

 BY THE COURT: Any complaints whatsoever about his representation?
 

 BY THE DEFENDANT: Not at all.
 

 Accordingly, this issue is without merit.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
 

 KING, C.J., LEE AND MYERS, P. JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Several other charges were remanded to the files pursuant to his plea agreement.
 

 [2]
 

 . We .find it important to note that while Walton's signature is on the notice of appeal, the date of execution is missing. There is a handwritten note on the pleading stating, "received Jan. 15, 2008.” We further note that Walton's designation of record, motion to proceed on appeal
 
 in forma pauperis,
 
 and affidavit of poverty were also filed on February 25, and all of these pleadings were signed by him on February 13.
 

 [3]
 

 . Walton's petition to enter guilty plea is not contained in the record. However, in the absence of some indication in the record that the trial judge based his findings on facts outside of the record, we, as an appellate court, must presume that the findings are supported by substantial evidence that was before the trial judge at the time he made his findings.
 
 Miss. Pub. Serv. Comm'n v. Merchs. Truck Line, Inc.,
 
 598 So.2d 778, 783 (Miss.1992). Further, since Walton contends that he was not informed before entering his guilty plea that he would be ineligible for parole, it was incumbent upon him in designating the record on appeal to make sure it contained all documents supporting his issues. Since he did not designate his petition to enter guilty plea as a part of the record on appeal, it is perhaps reasonable to assume that the petition belies his allegation.